Filed 4/8/15  In re T.G. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | H040915 (Santa Clara County Super. Ct. No. 313JV40128C) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.G.,<br><br>    Defendant and Appellant. | |

The juvenile court found true the allegations that T.G. (minor) threatened his teacher in violation of Penal Code section 71, subdivision (a).[1]  On appeal, minor argues insufficient evidence supports the juvenile court's findings, and the juvenile court erred when it ordered him to be jointly and severally liable to pay the cost of his public defender.

We conclude sufficient evidence supports the juvenile court's finding that minor violated section 71.  However, we modify the order to clarify that minor is not liable to pay the attorney fees imposed by the court.  As modified, we affirm the order.

---

[1] Further unspecified statutory references are to the Penal Code.  Petition C alleges that minor violated section 71, subdivision (1).  However, section 71, subdivision (1) does not exist.  Subdivision (a) of section 71 sets forth the elements of the offense of threatening a public employee.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Procedural History*

On June 19, 2013, a juvenile wardship petition (Petition A) was filed pursuant to Welfare and Institutions Code section 602 charging minor with auto theft in violation of Vehicle Code section 10851, subdivision (a). On July 8, 2013, minor admitted the allegation in the petition and was given deferred entry of judgment.

On August 26, 2013, another juvenile wardship petition (Petition B) was filed charging minor with auto theft in violation of Vehicle Code section 10851, subdivision (a) and receiving a stolen vehicle in violation of section 496d. Minor admitted the allegation he had committed auto theft in violation of Vehicle Code section 10851, and the receiving a stolen vehicle allegation was dismissed. The matter was set for a dispositional hearing.

On November 13, 2013, a third juvenile wardship petition (Petition C) was filed charging minor with threatening a public employee in violation of section 71. The following month, another juvenile wardship petition (Petition D) was filed charging minor with exhibiting a deadly weapon other than a firearm in violation of section 417, subdivision (a)(1).

On February 6, 2014, the juvenile court conducted a contested jurisdictional hearing on Petitions C and D. Following the hearing, the court dismissed Petition D and found the allegation in Petition C to be true.

On March 11, 2014, a dispositional hearing was held. The court found minor to be a ward of the court and placed him on probation with no maximum amount of time imposed. Minor was placed 60 days on the electronic monitoring program and returned to the family home.

The juvenile court also imposed $450 in attorney fees. Whether these fees were imposed on minor's family or on minor himself is unclear. When asked to consider the family's financial situation during the hearing, the court responded, "That is not for me to

do.  That is for the Department of Revenue.  I will set it at four hundred fifty dollars.  They will need to go to the Department of Revenue and be initially evaluated for ability to pay."  However, the attachment to the dispositional order listing the conditions of probations contained a condition that stated:  "The minor and his parents are jointly and severally responsible for the payment of fines, penalty assessments, and/or restitution, as ordered by the Court."[2]

*Factual Background*

The incident forming the basis of Petition C occurred on September 26, 2013.  That day, minor was attending algebra I class at his high school.  The class was for special education students, and minor was a special education student with attention deficit problems.

At the start of the class, minor's teacher noticed that minor was wearing red clothing, which was contrary to school policy.  Minor's teacher informed him of his violation, and minor did not react.

Approximately 15 minutes before class ended, minor began moving around the classroom, talking to other students.  Minor also began to sit down in front of the classroom.  Other students were talking at the time, but minor's teacher felt that he was being disruptive.  She asked him to return to his assigned seat.  Minor complied, and when he returned to his seat he stated:  "I'm going to mess you up and this is not a threat, it's a promise."  Minor's teacher testified she was only 10 to 20 feet away from minor when he uttered this statement.

Minor's teacher became afraid that minor would act on his statement, so she e-mailed the school advisors and asked them to come to her classroom.  The advisors came and escorted minor to the school office.  Minor appeared visibly angry when he was

---

[2] The court stated during the hearing that it was adopting the probation department's recommendations in their entirety as modified.

3

removed, but otherwise went with the advisors willingly. Minor's teacher said she came to work the next day only because she knew minor was suspended. Minor's teacher contacted her union representative and obtained a restraining order against minor. Minor was later transferred to another school.

## DISCUSSION

On appeal, minor raises two main arguments: (1) the evidence was insufficient to support the trial court's true finding that he had violated section 71, and (2) the trial court erred in ordering him to be jointly and severally liable for attorney fees.

### 1. **Insufficient Evidence**

Following the contested jurisdictional hearing, the juvenile court found true the allegation that minor had violated section 71, subdivision (a). Minor contends there was insufficient evidence that he made a threat to inflict an unlawful injury and that the alleged threat was intended to influence the teacher's duties.

*Overview and Standard of Review*[3]

The statutory elements of a violation of section 71 are: " ' "(1) A threat to inflict an unlawful injury upon any person or property; (2) direct communication of the threat to a public officer or employee; (3) the intent to influence the performance of the officer or employee's official duties; and (4) the apparent ability to carry out the threat." ' " (*Ernesto H.*, *supra*, 125 Cal.App.4th at p. 308; see also *People v. Hopkins* (1983) 149 Cal.App.3d 36, 40-41.) Minor contends insufficient evidence supports two elements of a

---

[3] The Supreme Court has held that "when a defendant raises a plausible First Amendment defense" the "reviewing court should make an independent examination of the record . . . to ensure that a speaker's free speech rights have not been infringed by a trier of fact's determination that the communication at issue constitutes a criminal threat." (*In re George T.* (2004) 33 Cal.4th 620, 632.) This standard of review has been applied to cases discussing section 71. (*In re Ernesto H.* (2004) 125 Cal.App.4th 298 (*Ernesto H.*).) However, here minor does not raise a First Amendment defense in challenging the juvenile court's finding under section 71.

section 71 violation: that he threatened to inflict an unlawful injury on the teacher, and that he intended to influence the performance of the teacher's official duties.

The applicable standard of review to determine whether sufficient evidence supports the juvenile court's findings is well settled. We are bound by the same principles as those governing the review of criminal convictions. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) Those principles include the following: "In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--evidence that is reasonable, credible and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129; see also *People v. Meza* (1995) 38 Cal.App.4th 1741, 1745.)

*Threat to Inflict Unlawful Injury*

In his opening brief, minor argues that "given the totality of the circumstances, there is insufficient evidence to show that T.G.'s remark was a threat to inflict an unlawful injury upon any person or property." Therefore, we construe his argument to be that under the circumstances, his statements cannot be characterized as a threat.

Minor presents a different argument in his reply brief. Instead of claiming that his statements did not constitute a threat, he argues there was insufficient evidence that he *intended* his statements to be a threat.[4] This recharacterization of his argument from his

_____

[4] In his opening brief, minor argues the following: "For all the foregoing [*sic*], given the totality of the circumstance, there is insufficient evidence to show that [minor's] remark *was a threat to inflict an unlawful injury upon any person or property*. The remark itself is ambiguous and given the absence of any evidence in the (continued)

5

opening brief is not a fair response to the People's rebuttal. It raises an entirely new claim not presented in his opening brief. Typically, "[p]oints raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. To withhold a point until the closing brief deprives the respondent of the opportunity to answer it or requires the effort and delay of an additional brief by permission." (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

Minor does not state any reason for failing to raise this point in his opening brief. Instead, he maintains the arguments are the same. However, we fail to see how a claim of insufficient evidence that a statement constitutes a threat to inflict unlawful injury is the same as a claim of insufficient evidence of the minor's *specific intent* that his statement be taken as a threat.[5] Therefore, we disregard minor's argument on this point and proceed to examine the merits of his argument that his statement did not constitute a threat under section 71.

"To determine whether the minor's statement to [the teacher] may be construed as a threat to inflict an unlawful injury upon person or property, we must examine not only

---

circumstances surrounding its communication which could add meaning and context to the words, this was nothing more than an angry outburst by a minor child after being told to return to his seat and the juvenile court's true finding cannot stand." (Italics added.) In his reply brief, minor transforms this initial argument, claiming that there is "insufficient evidentiary support in the record that [minor] *had the intent* that his angry outburst was meant to be taken as a threat . . . ." (Italics added.)

[5] In part, it appears minor confuses the issue. Minor seems to believe that because section 71 prohibits *threats*, inherent in the statute is an additional requirement that the defendant must possess the specific intent that his or her words be taken as a threat by the victim. This claim is unsupported. Other criminal statutes criminalizing threats, such as section 422, require this specific mental state. Section 422, subdivision (a) provides that an individual must have "the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat . . . ." However, section 71 requires a different mental state. Under section 71, the specific intent required is the intent to influence the performance of the public officer's duties. (§ 71, subd. (a); *Ernesto H.*, *supra*, 125 Cal.App.4th at p. 308.)

6

the words spoken but also the circumstances surrounding the communication. [Citations.]  In doing so, we will keep in mind that . . . section 71 is designed to prohibit plausible or serious threats and 'to ignore pranks, misunderstandings, and impossibilities.'  [Citation.] . . . [T]he threatened injury [must] be of a nature that would be taken seriously and could cause the recipient to act or refrain from acting to avoid the threatened harm."  (*Ernesto H.*, *supra*, 125 Cal.App.4th at pp. 310-311.)

Minor relies on two cases, *In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Ricky T.*) and *In re Ryan D.* (2002) 100 Cal.App.4th 854 (*Ryan D.*), to support his argument that his statement was not a threat.  In *Ricky T.*, a student was accidentally hit when a teacher abruptly opened a door.  (*Ricky T.*, *supra*, at p. 1137.)  The student told the teacher he would "get" him and that he was going to " 'kick [his] ass.' "  (*Ibid.*)  The juvenile court sustained the allegation that the minor had violated section 422 by making a criminal threat, but did not sustain an allegation that he had violated section 71.  (*Ricky T.*, *supra*, at p. 1138.)  The appellate court reversed, finding there was insufficient evidence that the minor's statements constituted a true threat within the meaning of section 422.  (*Ricky T.*, *supra*, at p. 1139.)

In coming to this conclusion, the *Ricky T.* court noted that under section 422, a threat must be " '*so* unequivocal, unconditional, immediate, and specific [that it] convey . . . a gravity of purpose and an immediate prospect of execution of the threat . . . .' " (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1137.)  The appellate court noted that in this particular case, the police were not called until the following day, the teacher did not have a history of disagreements with the student, and there was no other evidence that a physical confrontation was actually imminent.  (*Id.* at p. 1138.)  The appellate court further noted that in acquitting minor of the section 71 charge, the juvenile court had not found any evidence proving that minor had entertained the specific intent to interfere with the teacher's official duties, or that the minor's outburst had the required effect of

7

creating a reasonable belief that his threat could be carried out. (*Ricky T.*, *supra*, at p. 1139.)

Like *Ricky T.*, *Ryan D.* involved the juvenile court's sustaining of a section 422 allegation. (*Ryan D.*, *supra*, 100 Cal.App.4th at p. 857.) In *Ryan D.*, the appellate court reversed the juvenile court's jurisdictional finding due to insufficient evidence. The student in *Ryan D.* had submitted a painting in his art class where he had depicted himself shooting a female peace officer who had previously cited him for possessing marijuana. (*Id.* at pp. 858-859.) The appellate court concluded that the evidence failed to establish that the student had intended to convey a threat to the peace officer, because there was no evidence that at the time he acted, the minor had intended the painting be shown to the peace officer. (*Id.* at p. 864.) Furthermore, the painting "did not convey a gravity of purpose and immediate prospect of the execution of a crime that would result in death or great bodily injury to" the officer. (*Id.* at p. 862.)

We find minor's reliance on *Ricky T.* and *Ryan D.* misplaced. These cases discussed whether the threat element of a section 422 violation was established. They did not discuss whether evidence was sufficient to support a juvenile court's finding that a statement constituted a threat for the purposes of section 71.[6] Sections 422 and 71 both criminalize threats, but the elements of the offenses are not the same. " 'It is axiomatic that cases are not authority for propositions not considered.' " (*People v. Avila* (2006) 38 Cal.4th 491, 566.)

Instead, we find *Ernesto H.*, *supra*, 125 Cal.App.4th 298 applicable. In *Ernesto H.*, a teacher broke up a fight between two students. Later, the teacher noticed the two students were attempting to fight again with the minor acting as a lookout. The teacher

---

[6] Section 422 "requires that the threat both carry an 'immediate prospect of execution' and cause 'sustained fear,' elements not present in Penal Code section 71 . . . ." (*Ernesto H.*, *supra*, 125 Cal.App.4th at p. 312.)

approached the students and yelled at them to stop fighting. Minor said " ' "Don't yell at me." ' " (*Id.* at p. 303.) Later, he said " ' "Yell at me again and see what happens." ' " (*Ibid.*) When the minor made this statement, the teacher recalled that his head was tilted back, he took a step toward the teacher, and his hands were clenched at his sides. (*Id.* at p. 304.) The teacher asked the minor if he was threatening him, and the minor did not respond. The teacher felt threatened and believed the minor would retaliate in the future. (*Ibid.*)

A juvenile wardship petition was filed against the minor, alleging the minor had violated sections 71 and 422. (*Ernesto H.*, *supra*, 125 Cal.App.4th at p. 304.) The juvenile court found true the allegation that minor had violated section 71, and the minor appealed. The appellate court determined that the minor's statements constituted a threat to inflict an unlawful injury upon a person or property. (*Ernesto H.*, *supra*, at p. 313.) Standing alone, the minor's statement was ambiguous. However, when put in context, the statement constituted a threat. The minor was upset and angry when he spoke the words. When he made the statement, he stepped toward the teacher, tilted his head back, and the teacher recalled he clenched his fists. Furthermore, the teacher told the police officer he feared for his safety and believed the minor would retaliate against him in the future. (*Id.* at p. 311.) The court concluded "the threat element of Penal Code section 71 was satisfied when [the teacher] testified that he felt afraid and that he feared the minor might retaliate in the future." (*Id.* at p. 313.)

Like in *Ernesto H.*, the teacher here testified that she was afraid that minor would harm her. She stated she felt violated. Part of her fear was based on her knowledge of minor's behavior in the classroom. Furthermore, the teacher asserted she only came to school the next day because she knew minor was suspended. Following the incident, she blacked out her windows and locked her classroom door until she was told that minor had been transferred to a different school. She sent an e-mail to the school's advisors

9

immediately after minor made the remarks, who removed him from the classroom that day.

In sum, after considering the circumstances surrounding the event, we conclude sufficient evidence supports the juvenile court's finding that the statement constituted a threat to inflict unlawful injury pursuant to section 71.

*Intent to Influence Performance of the Teacher's Duties*

Next, minor argues there is insufficient evidence that he intended to influence the performance of the teacher's official duties.

As articulated in *Ernesto H.*, "[i]ntent is rarely susceptible of direct proof. Therefore, in determining whether the element of intent has been established, we consider whether it may be inferred from all the facts and circumstances disclosed by the evidence." (*Ernesto H.*, *supra*, 125 Cal.App.4th at p. 313.)

In *Ernesto H.*, the court concluded sufficient evidence supported the juvenile court's finding that the minor had intended to influence the performance of the teacher's duties. (*Ernesto H.*, *supra*, 125 Cal.App.4th at p. 314.) Specifically, the court noted that "[w]hen the minor told [the teacher] that something could happen to him unless he stopped yelling, the minor was clearly interfering with [the teacher's] attempt to restore order to the physical education class." (*Ibid.*)

As in *Ernesto H.*, here the intent to influence the performance of the teacher's duties can be inferred from the circumstances surrounding the incident. During class, minor was not in his seat and was walking around the classroom. The teacher told him to sit down at his assigned seat, because she thought he was being disruptive. Although minor physically complied, he made threatening remarks immediately following the teacher's discipline. Disciplining students and maintaining order in a classroom are duties of a high school teacher. From the circumstances, minor's statement can be seen as an effort to prevent the teacher from performing these duties, because the teacher sought to maintain order in the classroom when the threat was made.

10

Accordingly, sufficient evidence supports the finding that minor acted with the specific intent to influence the performance of the teacher's duties.  We therefore find no error with the juvenile court's true finding that minor violated section 71, subdivision (a).

2. **Attorney Fees**

Next, minor argues the trial court erred when it ordered him to be jointly and severally liable for the payment of $450 of attorney fees as a condition of his probation.

Preliminarily, we note that the record is unclear on whether the court actually ordered minor to be jointly and severally liable for these fees.  During the hearing, the court orally imposed $450 in attorney fees.  When asked to consider the family's financial situation, the court responded that "[t]hat is not for me to do.  That is for the Department of Revenue.  I will set it at four hundred fifty dollars.  They will need to go to the Department of Revenue and be initially evaluated for ability to pay."  It seems the "they" referred to by the trial court was the minor's family, not minor himself.  However, the attachment to the dispositional order listing the conditions of probations contained a condition that stated:  "The minor and his parents are jointly and severally responsible for the payment of fines, penalty assessments, and/or restitution, as ordered by the Court."  The juvenile court indicated during the hearing that it was imposing all the recommendations in the probation report.

The People agree that to the extent the court's order is ambiguous, it cannot be construed to require minor to be liable to pay the attorney fees.  Welfare and Institutions Code section 903.1, subdivision (a) provides in pertinent part:  "The father, mother, spouse, or other person liable for the support of a minor, the estate of that person, and the estate of the minor, shall be liable for the cost to the county or the court, whichever entity incurred the expenses, of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court."  Welfare and Institutions Code section 903.1 "does not authorize juvenile courts to impose attorney fees on a minor if the minor is under 18

11

years of age when counsel is appointed." (*In re Gary F.* (2014) 226 Cal.App.4th 1076, 1083 (*Gary F.*).)

Minor did not object below to the imposition of the fees. However, the juvenile court lacks jurisdiction to impose attorney fees on a minor in this situation, so the sentence is unauthorized and minor has not forfeited his claim on appeal for failure to object. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *Gary F.*, *supra*, 226 Cal.App.4th at p. 1083, fn. 5.)

Accordingly, to provide clarity we will modify the order to state that minor is not liable for the attorney fees ordered by the juvenile court.[7]

### DISPOSITION

The order is modified to include the following: "The minor is not liable for the amount of $450 in attorney fees assessed by the juvenile court." As modified, the order is affirmed.

---

[7] As a result, we need not reach minor's other arguments pertaining to this claim. Furthermore, we reject minor's argument that the fees should be vacated. From the court's oral statements during the hearing, it appears it intended to impose the attorney fees on minor's parents. Since we clarify that minor is not jointly or severally liable for the attorney fees, the fees would be authorized under the law and there would be no further error with the trial court's order.

12

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Márquez, J.